RECORD NO. 15-4171

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## SAMUEL MICHAEL FINCH,

*Defendant – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

—————————

### BRIEF OF APPELLANT

—————————

W. Michael Dowling
BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD L.L.P.
1600 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina  27601
(919) 839-0300

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES ........................................................................2

STATEMENT OF THE CASE....................................................................3

    Procedural History ...............................................................................3

    Statement of Facts................................................................................5

SUMMARY OF THE ARGUMENT ..........................................................8

ARGUMENT .............................................................................................12

    I.    The district court's upward departure directly from criminal history category III to criminal history category V was procedurally unreasonable...............................................................12

        A.    Standard of review .................................................................12

        B.    The district court's departure directly from criminal history category III to criminal history category V was procedurally unreasonable ........................................12

    II.    The district court imposed a substantively unreasonable sentence .................................................................................19

        A.    Standard of review .................................................................19

        B.    Seventy-two months is an unreasonable departure sentence .....................................................................20

        C.    Seventy-two months is an unreasonable alternative variant sentence.......................................................22

i

CONCLUSION .......................................................................................................30

REQUEST FOR ORAL ARGUMENT ..................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Gall v. United States*,
128 S. Ct. 586 (2007)........................................................................12, 19, 22

*Graham v. Florida*,
560 U.S. 48 (2010)..........................................................................26

*Mentavlos v. Anderson*,
249 F.3d 301 (4th Cir. 2001) .........................................................16

*Miller v. Alabama*,
132 S. Ct. 2455 (2012)....................................................................26

*Roper v. Simmons*,
543 U.S. 551 (2005)........................................................................25, 26

*United States v. Amezquita-Franco*,
523 Fed. Appx. 971 (4th Cir. 2013) ..............................................14

*United States v. Carter*,
564 F.3d 325 (4th Cir. 2009) .........................................................12, 19

*United States v. Coe*,
891 F.2d 405 (2d Cir. 1989) ..................................................*passim*

*United States v. Dalton*,
477 F.3d 195 (4th Cir. 2007) .........................................................14, 15, 16

*United States v. Gomez-Jimenez*,
750 F.3d 370 (4th Cir. 2014) .........................................................22

*United States v. Green*,
436 F.3d 449 (4th Cir. 2006) .........................................................23

*United States v. Hampton,*
    441 F.3d 284 (4th Cir. 2006) ........................................................................23

*United States v. Howard,*
    773 F.3d 519 (4th Cir. 2014) ................................................................*passim*

*United States v. Lambert,*
    984 F.2d 658 (5th Cir. 1993) ........................................................................14

*United States v. Lawrence,*
    161 F.3d 250 (4th Cir. 1998) ................................................................*passim*

*United States v. Rivera-Santana,*
    668 F.3d 95 (4th Cir. 2012) ..........................................................................15

*United States v. Rusher,*
    966 F.2d 868 (4th Cir. 1992), *cert. denied,*
    506 U.S. 926 (1992)................................................................................*passim*

*United States v. Tucker,*
    473 F.3d 556 (4th Cir. 2007) ........................................................................23

## **STATUTES**

18 U.S.C. § 922(g) .............................................................................................3

18 U.S.C. § 924................................................................................................3

18 U.S.C. § 3231..............................................................................................1

18 U.S.C. § 3553(a) .................................................................................*passim*

18 U.S.C. § 3553(a)(1).....................................................................................27

18 U.S.C. § 3553(a)(2)................................................................................24, 26

18 U.S.C. § 3553(a)(2)(A) ...............................................................................27

18 U.S.C. § 3553(a)(2)(B) ...............................................................................27

18 U.S.C. § 3553(a)(6)..................................................................27

18 U.S.C. § 3742(a) ......................................................................1

18 U.S.C. § 3742(f)(2)..................................................................13

21 U.S.C. § 841(a)(1)....................................................................3

21 U.S.C. § 841(b)(1)(c) ...............................................................3

21 U.S.C. § 856(a)(1)....................................................................3

28 U.S.C. § 1291 ..........................................................................1

## **GUIDELINES**

U.S.S.G. § 4A1.3...................................................................*passim*

U.S.S.G. § 4A1.3(a)(1) ..........................................................8, 12

U.S.S.G. § 4A1.3(a)(2) ..............................................................21

U.S.S.G. § 4A1.3(a)(2)(A)..........................................................13

## JURISDICTIONAL STATEMENT

This is a direct appeal of a sentence of imprisonment imposed in a federal criminal case.  Jurisdiction was conferred on the United States District Court for the Eastern District of North Carolina by 18 U.S.C. § 3231.  Appellate jurisdiction is conferred on this Court by 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  The district court entered final judgment on March 20, 2015 (J.A. 7, 72-77), and Mr. Finch filed a timely notice of appeal on March 23, 2015, (J.A. 78).

## <u>STATEMENT OF ISSUES</u>

1.      Whether the district court's upward departure pursuant to U.S.S.G. § 4A1.3 directly from criminal history category III to criminal history category V was procedurally unreasonable.

2.      Whether the district court imposed a substantively unreasonable sentence.

## STATEMENT OF THE CASE

**Procedural History**

On February 18, 2014, a grand jury sitting in the Eastern District of North Carolina indicted Mr. Finch. (J.A. 10-11). The indictment alleged that Mr. Finch committed three violations of federal law on November 20, 2012. (*Id.*) Count One charged Mr. Finch with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924. (J.A. 10). Count Two charged Mr. Finch with possession with the intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). (J.A. 10). Count Three charged Mr. Finch with maintaining a place for the purpose of manufacturing heroin and cocaine base, in violation of 21 U.S.C. § 856(a)(1). (J.A. 12). On October 1, 2014, Mr. Finch entered a plea of guilty to Count One. (J.A. 4, 80-87).

The presentence investigation report ("PSR") prepared by the United States Probation Office recommended an advisory sentencing guideline range of forty-six to fifty-seven months of imprisonment. (J.A. 98). The Probation Officer who authored the PSR also noted that the district court might wish to consider an upward departure on the ground that Mr. Finch's criminal history category of III underrepresented his true criminal history. (J.A. 99). Neither party filed any objections to the PSR. (J.A. 100).

At the sentencing hearing on March 12, 2015, the district court adopted the factual findings in the presentence report. (J.A. 40). The district court initially found that Mr. Finch's offense level was twenty-one, his criminal history category was III and, thus, his guideline range for imprisonment was forty-six to fifty-seven months. (J.A. 41).

At the outset of the hearing, the district court made clear it had concerns regarding the adequacy of Mr. Finch's criminal history category. After hearing from the parties, the court found, pursuant to U.S.S.G. § 4A1.3, that Mr. Finch's criminal history category did not adequately reflect the seriousness of his past criminal activity or his likelihood of recidivism. (J.A. 50-54). The district court then departed directly from criminal history category III to criminal history category V. (J.A. 54) ("[I]'ve already talked about his criminal history and his conduct and I think that Criminal History Category III is inadequate, I'm going to go to Criminal History Category V, so he'll be a 21 and a V, and his advisory guideline range is now 70 to 87 months.").

The district court never stated why the intermediate criminal history category of IV would not adequately reflect Mr. Finch's criminal history or his future chance of recidivism. In fact, in addition to noting an objection to any departure, Mr. Finch's counsel requested the court's consideration of that intermediate category. (J.A. 54-55). Nevertheless, the district court did not

explain why criminal history category IV would have been insufficient or inadequate under the circumstances.  (J.A. 55).

Ultimately, the district court sentenced Mr. Finch to seventy-two months imprisonment, a three-year term of supervised release, and a special assessment of $100.  (J.A. 72-77).  The court entered a written judgment on the docket on March 20, 2015, and dismissed Counts Two and Three.  (J.A. 7, 72-77).  Mr. Finch filed a timely Notice of Appeal on March 23, 2015.  (J.A. 8, 78-79).

**Statement of Facts**

In the fall of 2012, Mr. Finch was twenty-three years old.  (J.A. 89).  In November of that year, the Rocky Mount, North Carolina Police Department ("RMPD") learned from a confidential source that Mr. Finch possessed both heroin and a firearm at his residence.  (J.A. 91).  RMPD obtained a search warrant based on that tip and executed the warrant at Mr. Finch's residence on November 20, 2012.  (*Id.*)  As officers entered to execute the warrant, Mr. Finch fled through the rear door of the house, but Mr. Finch was quickly apprehended and taken into custody.  (*Id.*)  During the search of the house, officers recovered ten grams of heroin, drug paraphernalia, and a .22 caliber rifle.  (*Id.*)

After his arrest, Mr. Finch made several unprotected statements to law enforcement officers.  (J.A. 91).  Mr. Finch explained that he was living in the home with his girlfriend, and that the .22 rifle had been there just a "few days."

5

(*Id.*).  Mr. Finch stated that his girlfriend's son had received the rifle from his grandfather.  (*Id.*)  Mr. Finch explained to officers that his girlfriend had asked Mr. Finch to put the rifle in his closet (presumably to keep it from the girlfriend's young son).  (*Id.*).  Mr. Finch also unequivocally told officers that he was a former member of a gang.  (J.A. 92).

The district court made clear at the outset of the sentencing hearing, before hearing any argument from the parties, that it was "deeply concerned about this case and this defendant and the need to protect the public,"  (J.A. 41-42), and that it was considering an upward departure under U.S.S.G. § 4A1.3.  Mr. Finch objected to the court's proposed upward departure, and the Assistant United States Attorney assigned to this case did not support it either.  (J.A. 48, 63).  The prosecutor instead requested that the court impose a sentence of fifty-one months, in the middle of Mr. Finch's advisory guideline range.  (*Id.*).

Nevertheless, the district court disregarded the parties' requests at sentencing, imposed a two-criminal-history-category upward departure, and an above-guidelines sentence of seventy-two months of imprisonment.  On the way to imposing this sentence, the district court revealed that its "deep[] concern[s]" were grounded, in substantial part, upon Mr. Finch's prior criminal history.  (J.A. 49-54).  That criminal history included several misdemeanor charges that Mr. Finch sustained between the ages of sixteen and nineteen, including charges of disorderly

conduct, assault on a government official, possessing stolen property, and resisting a public officer. (J.A. 51). The district court also placed heavy emphasis on Mr. Finch's only prior felony conviction: a conviction for an assault that Mr. Finch committed at the age of nineteen. (J.A. 51-52).

What did not appear to move the district court were the various unrebutted mitigating facts in the record. As pointed out below, Mr. Finch had a harrowing childhood and adolescence. (J.A. 56). He was molested at the age of seven by a family member, and, unfortunately, he never received any treatment for that trauma. (*Id.*) Mr. Finch was also mentally and physically abused by his step-father at a young age; at one point, his step father gave him a loaded firearm and told him to kill himself. (*Id.*)

Mr. Finch also submitted letters of support to the court, which discussed the positive work the Mr. Finch performed within his community—work that included encouraging children to stay away from gangs. (J.A. 57-58). Ralph Remsey, the manager of an IHOP restaurant, noted that Mr. Finch "is a well-loved and honest character with great intentions." (J.A. 60). Mr. Remsey also offered Mr. Finch a job at an International House of Pancakes restaurant upon his release from prison. (*Id.*) The government never attempted to rebut any of the foregoing mitigating factors. Nevertheless, the Court gave little if any consideration to these factors in fashioning a sentence for Mr. Finch.

# SUMMARY OF THE ARGUMENT

A district court may depart upwardly and impose a sentence outside the normal guideline range based on a finding that a defendant has an inadequate criminal history category—that is, a departure is appropriate where reliable information indicates that the criminal history category "*substantially* under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. § 4A1.3(a)(1) (emphasis added). In the case of an upward departure based on an inadequate criminal history category, for the district court's decision to be "reasonable," it must have been made using the step-by-step approach set forth in *United States v. Rusher*, 966 F.2d 868, 884 (4th Cir. 1992), *cert. denied*, 506 U.S. 926 (1992).

In *Rusher*, this Court stated that when upwardly departing based on an inadequate criminal history category, a sentencing judge must "refer first to the next higher category and . . . [then] move on to a still higher category only upon a finding that the next higher category fails adequately to reflect the seriousness of the defendant's record." *Rusher*, 966 F.2d at 884. This Court went on to note that "when a judge concludes a defendant's category is inadequate, a sentence in the range of the next higher category will usually be sufficient." *Id.* at 885 (quoting *United States v. Coe*, 891 F.2d 405, 413 (2d Cir. 1989)).

At sentencing in this case, the district court initially found that Mr. Finch's offense level was twenty-one, his criminal history category was III and, thus, his guideline range for imprisonment was forty-six to fifty-seven months. After hearing from the parties, the court found, pursuant to U.S.S.G. § 4A1.3, that Mr. Finch's criminal history category did not adequately represent the seriousness of his past criminal activity. The district court then departed directly from criminal history category III to criminal history category V.

The district court never stated why the intermediate category, criminal history category IV, did not adequately reflect Mr. Finch's "true" criminal history or chances of recidivism. In fact, Mr. Finch's counsel expressly argued for the court's consideration of the intermediate category, but the district court failed to ever articulate why criminal history category IV was insufficient or inadequate. For that reason the court's departure violated the requirements set forth in *Rusher* and is, therefore, procedurally unreasonable.

The extent of the district court's upward departure was also substantively unreasonable. "Section 4A1.3 was drafted in classic catch-all terms for the *unusual but serious* situation where the criminal history category does not adequately reflect past criminal conduct or predict future criminal behavior." *United States v. Lawrence*, 349 F.2d 724, 730 (4th Cir. 2003) (emphasis added). As this Court noted, "[i]n light of the Commission's careful consideration of the

9

criminal history categories, when a judge concludes that a defendant's category is inadequate, ***a sentence in the range of the next higher category will usually be sufficient***." *Rusher*, 966 F.2d at 884 (emphasis added) (quoting *United States v. Coe*, 891 F.2d 405, 413 (2d Cir. 1989)). In this case, however, without any explanation, the district court departed upward two criminal history categories. Although the conduct that was the basis of this departure is serious, it is not so extraordinary as to warrant a departure a category beyond what this Court held "will usually be sufficient." *Id.*

At sentencing, over Mr. Finch's objection, the district court also indicated it would impose the same sentence as a variance. Mr. Finch's advisory guideline range was forty-six to fifty-seven months. Regardless of whether the above-guideline sentence was reached as a departure or a variance, a sentence of seventy-two months imprisonment is unreasonable in light of the 18 U.S.C. § 3553(a) factors. Therefore, Mr. Finch's sentence should be vacated and his case remanded for resentencing.

When viewed in the context of a variant sentence, the 3553(a) factors mitigate in favor of a within-guidelines sentence. Mr. Finch submitted letters of support to the district court which revealed a compassionate side, and a young man who had actively tried to steer children away from crime and gangs. One individual in particular, a manager at an International House of Pancakes

restaurant, even offered to employ Mr. Finch upon his release from prison. Mr. Finch has strong family support and a number of friends and family members attended his sentencing hearing. Mr. Finch also publicly dissociated from a dangerous gang—subjecting himself to physical harm in prison and in the community upon his release. Finally, and perhaps most tellingly, the Assistant United States Attorney did ***not*** support an above-guidelines sentence in this case, calling instead for a sentence in the middle of the advisory guideline range.

Based upon Mr. Finch's personal history and characteristics, the nature and circumstances of the offense, and the need to provide just punishment for the crimes he committed, a sentence of seventy-two months imprisonment is greater than necessary to satisfy 18 U.S.C. § 3553(a) and, thus, is unreasonable. Accordingly, this Court should vacate the judgment of the district court and remand the case for resentencing.

# ARGUMENT

I. **The district court's upward departure directly from criminal history category III to criminal history category V was procedurally unreasonable.**

    *A.    Standard of review*

Appellate courts apply an "abuse-of-discretion standard" when reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 591 (2007). The court "must first 'ensure that the district court committed no significant procedural error.' If, and only if, [the court finds] the sentence procedurally reasonable can [it] 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009), citing *Gall*, 128 S. Ct. at 591.

    *B.    The district court's departure directly from criminal history category III to criminal history category V was procedurally unreasonable.*

The district court in this case abused its discretion when it upwardly departed two criminal history categories. A district court may depart upward and impose a sentence outside the normal guideline range, based on a finding that a defendant has an inadequate criminal history category—that is, that the criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes . . . ." U.S.S.G. § 4A1.3(a)(1) (emphasis added).

The court's authority to make an upward departure is not unlimited. Rather, its departure must be "reasonable," and is subject to review for an abuse of discretion. 18 U.S.C. § 3742(f)(2); *United States v. Rusher*, 966 F.2d 868, 884 (4th Cir. 1992), *cert. denied*, 506 U.S. 926 (1992). In order for the district court's decision to be "reasonable," it must have been made using the step-by-step approach set forth in *Rusher*. In *Rusher*, the district court upwardly departed from criminal history category III directly to criminal history category VI, without giving adequate reasons and without considering and rejecting the intervening categories before moving up to the next higher category. This Court reversed and remanded, stating that the sentencing judge must "refer first to the next higher category and . . . [then] move on to a still higher category only upon a finding that the next higher category fails adequately to reflect the seriousness of the defendant's record." *Rusher*, 966 F.2d at 884. This Court went on to note that "when a judge concludes a defendant's category is inadequate, a sentence in the range of the next higher category will usually be sufficient." *Id.* at 885 (quoting *United States v. Coe*, 891 F.2d 405, 413 (2d Cir. 1989)).

The court ordered that, if the district court were to decide to depart on reconsideration, "it must first consider criminal history category IV and state why that category does not adequately represent [the defendant's] history before considering a higher category." *Id.* at 885. Although those instructions were

arguably dicta,[1] they were adopted by another panel in *United States v. Lawrence*, 161 F.3d 250, 255-56 (4th Cir. 1998). In *Lawrence*, the case was remanded because the "trial court did not explain the criminal conduct it believed to be unaccounted for or the method that it used to reach the guideline range that it chose." *Id.*, 161 F.3d at 256.

To be sure, some Fourth Circuit case law after *Rusher* and *Lawrence* appears to be contrary to those cases, but any inconsistencies in those cases are not controlling. In *United States v. Dalton*, 477 F.3d 195, 199 (4th Cir. 2007), this Court acknowledged that an incremental approach is required, but went on to state that "the mandate to depart incrementally does not, of course, require a sentencing judge to move only one level, or to explain its rejection of each and every intervening level." Rather than following *Rusher* and *Lawrence*, that panel cited a Fifth Circuit case, *United States v. Lambert*, 984 F.2d 658, 663 (5th Cir. 1993) (en banc), to state that a court need not "go through a ritualistic exercise in which it mechanically discusses each criminal history category [or offense level] it rejects en route to the category [or offense level] that it selects."[2]

---

[1] In his partial concurrence, partial dissent, Judge Luttig disagreed with the majority's interpretation and stated that it was "clearly dictum because the court vacates Rusher's sentence on the ground that the district court failed to explain adequately its departure decision." 966 F.2d at 890.

[2] *See also United States v. Amezquita-Franco*, 523 Fed. Appx. 971, 973 (4th Cir. 2013) (upholding upward departure from criminal history category III to criminal history category V and rejecting *Rusher* claim).

14

Yet, as this Court acknowledged in *United States v. Rivera-Santana*, 668 F.3d 95 (4th Cir. 2012), *Rusher* "require[s] the sentencing court to explain inadequacies of next higher criminal history category before upwardly departing within existing criminal history categories." *Id.* at 104. Then, citing *Dalton*, the *Rivera-Santana* panel stated there was no obligation to "go through a ritualistic exercise in which it mechanically discusses each criminal history category or offense level it rejects en route to the category or offense level that it selects." *Id.*

The inconsistency between the requirement that a court "explain inadequacies of next higher criminal history category before upwardly departing within existing criminal history categories" and there being no obligation to "go through a ritualistic exercise in which it mechanically discusses each criminal history category or offense level it rejects en route to the category or offense level that it selects" cannot be reconciled. Further, *Rusher* rejected the very premise that a court might "go through a ritualistic exercise in which it mechanically discusses each criminal history category it rejects." As this Court explained, the "reason for obliging a judge to examine the next higher categories in sequence, is that these categories reflect the Commission's careful assessment of how much incremental punishment a defendant should receive in light of the various degrees of a prior record." *Id.* (quoting *Coe*, 891 F.2d at 413 (emphasis added)). Because one panel cannot overrule another, *Lawrence*, which adopted *Rusher*'s "incremental"

15

analysis, and which predated *Dalton*, controls. *See Mentavlos v. Anderson*, 249 F.3d 301, 312 n.4 (4th Cir. 2001) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court[;] [o]nly the Supreme Court or this court sitting en banc can do that"). Moreover, *Rusher*'s reasoning is compelling, and consistent with the congressional mandate that a sentence be "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a).

In this case, the district court initially found that Mr. Finch's offense level was twenty-one, his criminal history category was III and, thus, his guideline range for imprisonment was forty-six to fifty-seven months. (J.A. 41). Notwithstanding the mine-run nature of this case, the district court indicated at the very outset of the sentencing hearing that it was "deeply concerned about this case and this defendant and the need to protect the public." (J.A. 41-42). The court initially grounded these concerns in a pending charge of attempted first degree murder in North Carolina State Court. (J.A. 42). The Court also quickly noted that Mr. Finch was a former gang member, that he had little employment history, and that he had no high school diploma or GED. (*Id.*)

Mr. Finch's counsel pointed out that the pending charges that appeared to give the district court the most concern were nothing more than unadjudicated allegations, which did not amount to the kind of "reliable information" that could

support an upward departure under U.S.S.G. § 4A1.3.  (J.A. 42-43).  The district court noted that counsel raised a "fair point," and that the court would therefore "put that aside."  (J.A. 43).

The court then turned to Mr. Finch's criminal history, and highlighted Mr. Finch's prior misdemeanor convictions for disorderly conduct, resisting arrest, and possessing stolen property.  (J.A. 43-44).  The court also noted that Mr. Finch was convicted of assaulting an individual with a handgun by shooting at him four and a half years earlier.  (J.A. 43).  The court again reiterated Mr. Finch's anemic work history and his lack of an education, before posing the rhetorical question to counsel: "why do you think that it's not fair to infer that his likelihood of recidivism, even it's not 100 percent, isn't very, very high?"  (J.A. 44).

Neither Mr. Finch's counsel nor government counsel agreed with the district court's assessment of this mine-run case.  (J.A. 44-45).  Mr. Finch's counsel stated that the "guidelines come to a reasoned conclusion as to what [Mr. Finch's] sentence should be under the circumstances," and that "everything that could be scored has been scored properly."  (J.A. 44).  The government made plain its belief that an upward departure was unwarranted:

> Your Honor, we're not asking for an upward departure in this case. In some respects we agree with [Mr. Finch's counsel] so far as we do believe a guideline sentence would be appropriate.

(J.A. 44-45).

Nevertheless, after hearing from the parties, the court found that Mr. Finch's criminal history category did not adequately reflect the seriousness of Mr. Finch's past criminal activity. The court concluded that "I do think the criminal history category substantially under-represents this defendant's—the seriousness of this defendant's criminal history or the likelihood that he will commit other crimes." (J.A. 50). The court then departed upward from a criminal history category III, and a guideline range of forty-six to fifty seven months, directly to a criminal history category V, and a corresponding guideline range of seventy to eighty-seven months. (J.A. 50-54). The court eventually imposed a sentence of imprisonment of seventy-two months. (J.A. 65.)

In conducting its upward departure analysis and explanation, the district court never stated why the intermediate criminal history category, category IV, would not adequately reflect Mr. Finch's criminal history. In fact, Mr. Finch's counsel unequivocally requested that consideration during the sentencing hearing, but that request was never addressed by the district court. (J.A. 54-55). For that reason, the district court's departure violated the requirements set forth in *Rusher* and was, therefore, procedurally unreasonable. Such an approach is directly at odds with *Rusher* and *Lawrence*, which require a step-by-step analysis of a defendant's criminal history, and that only after that analysis can a determination of an

appropriate criminal history category, and ultimately appropriate sentence, be made.

As this Court noted, "in formulating the guidelines in general and the criminal history categories in particular, the Commission sought to implement a congressional policy of lessening disparity by narrowing, though not eliminating, the discretion of sentencing judges." 966 F.2d at 884 (quoting *Coe*, 891 F.2d at 413). To allow *Rusher* to be applied in the way it was in this case would be to frustrate that congressional policy, and increase rather than lessen sentencing disparity.

## II. The district court imposed a substantively unreasonable sentence.

### A. *Standard of review*

Appellate courts apply a "deferential abuse-of-discretion standard" when reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 591 (2007). The court "must first 'ensure that the district court committed no significant procedural error.' If, and only if, [the court finds] the sentence procedurally reasonable can [it] 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009), citing *Gall*, 128 S. Ct. at 591.

B.    *Seventy-two months is an unreasonable departure sentence.*

The extent of the upward departure in this case was unreasonable.  "Section 4A1.3 was drafted in classic catch-all terms for the unusual but serious situation where the criminal history category does not adequately reflect past criminal conduct or predict future criminal behavior." *Lawrence*, 349 F.2d at 730 (emphasis added).  As this Court noted, "[i]n light of the Commission's careful consideration of the criminal history categories, when a judge concludes that a defendant's category is inadequate, a sentence in the range of the next higher will usually be sufficient."  *Rusher*, 966 F.2d at 884 (quoting *United States v. Coe*, 891 F.2d 405, 413 (2d Cir. 1989)).  In this case, however, the district court departed upward two criminal history categories.  Although the conduct that was the basis of this departure is serious, it is not so extraordinary as to warrant a departure a category beyond what this Court held "will usually be sufficient."  *Id.*

As set forth at sentencing, "the guidelines come to a reasoned conclusion as to what [Mr. Finch's] sentence should be under the circumstances," (J.A. 44), and a departure that exposes Mr. Finch to several more years in prison is not defensible in such a run of the mill case.  The assault conviction noted in paragraph fourteen of the PSR is by far the most serious conviction—it is the only felony conviction— in Mr. Finch's criminal history, and he was rightly assigned three criminal history points for it.  (J.A. 44).  This is not a case where multiple separate, serious offenses

were consolidated and assigned only two or three criminal history points. (*Id.*) Everything in Mr. Finch's criminal history that could be scored has been scored properly, and there is no other information in the record akin to the types of information in U.S.S.G. § 4A1.3(a)(2) that the court could rely on in departing upwardly. (*Id.*)

To be sure, Mr. Finch had three misdemeanor convictions for disorderly conduct, assault on a government official, and possessing stolen property for which he did not receive any criminal history points. (J.A. 93). But those aged, relatively minor, non-felonious offenses do not bring this case within the realm of "the unusual but serious situation where the criminal history category does not adequately reflect past criminal conduct or predict future criminal behavior." *United States v. Lawrence*, 349 F.3d 724, 730 (4th Cir. 2003). The unscored misdemeanor convictions could conceivably warrant a higher sentence *within* the advisory guideline range, or perhaps, with adequate explanation and facts not presently in the record, those convictions could warrant a one criminal history category departure; but those convictions do not justify what the district court imposed here: an aggressive *two* criminal history category upward departure. *Cf. Rusher*, 966 F.2d at 884 (one level criminal history category departure will usually be sufficient).

At bottom, given the straightforward nature of this case and the narrow universe of reliable information that the court could rely upon, a two criminal history category upward departure was unreasonable.

### C.    *Seventy-two months is an unreasonable alternative variant sentence.*

At sentencing, the district court also indicated it would impose the same seventy-two month sentence as a variance in the event its decision to upwardly depart were successfully challenged.[3]  The court stated: "If I have improperly upwardly departed, I do think this is the sentence that is sufficient but not greater than necessary for Samuel Michael Finch."  (J.A. 68).  However, viewed through the lens of the 18 U.S.C. § 3553(a) factors, and the purposes of sentencing under the Sentencing Reform Act, the district court's decision to impose a sentence more than two years higher than the low-end of Mr. Finch's advisory guideline range was an abuse of discretion warranting a reversal.

It is true that a sentence is not unreasonable simply because the district court could have assigned different weight to the various considerations in conducting its sentencing calculus under § 3553(a).  *Gall*, 552 U.S. at 51.

---

[3] The practice of district courts conclusorily announcing an "alternative variance sentence," as happened here, has been sharply criticized by at least one member of this Honorable Court.  *See United States v. Gomez-Jimenez*, 750 F.3d 370, 389 (4th Cir. 2014) (Gregory, J., dissenting) ("[I] do not believe that a simple statement that the court would have imposed the same sentence is sufficient [to survive harmless error review], at least where the imposed sentence exceeds what would have been the Guidelines range absent the procedural error.").  The concerns Judge Gregory notes in dissent in *Gomez-Jimenez* are equally applicable here.

However, "[s]entencing courts remain obligated not to 'give excessive weight to any relevant factor' and to impose a sentence 'which effect[s] a fair and just result in light of the relevant facts and law.'" *United States v. Tucker*, 473 F.3d 556, 562 (4th Cir. 2007) (quoting *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006)); *see also United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006) (vacating defendant's sentence as unreasonable because the district court relied on only one aspect of one § 3553(a) factor).

At sentencing, Mr. Finch's counsel argued that several factors under 18 U.S.C. § 3553(a) mitigated in favor of a within-guidelines sentence. (J.A. 55-61). As pointed out below, Mr. Finch had a harrowing childhood and adolescence. (J.A. 56). He was molested at the age of seven by a family member, and, unfortunately, he never received any treatment for that trauma. (*Id.*) Mr. Finch was also mentally and physically abused by his step-father at a young age; at one point, his step father gave him a loaded firearm and told him to kill himself. (*Id.*)

Mr. Finch also submitted letters of support to the court, and Mr. Finch's counsel expanded upon those letters at the hearing. These letters discussed the positive work the Mr. Finch performed within his community—work that included encouraging children to stay away from gangs. (J.A. 57-58). Ralph Remsey, the manager of an IHOP restaurant, noted that Mr. Finch "is a well-loved and honest character with great intentions." (J.A. 60). Mr. Remsey also offered Mr. Finch a

23

job at an International House of Pancakes restaurant upon his release from prison. (*Id.*) The government never attempted to rebut any of the foregoing evidence—evidence that plainly supported a mitigated sentence. What unquestionably emerged from the unrebutted record was a far more sympathetic and redeeming image of Mr. Finch than the one articulated by the district court.

*United States v. Howard*, 773 F.3d 519 (4th Cir. 2014) provides the proper framework for analyzing the substantive unreasonableness of Mr. Finch's sentence, and the degree to which the district court improperly and excessively focused on just one of the many relevant factors that must be considered by the Sentencing Reform Act. In *Howard*, this Court held that a criminal defendant's life-plus-sixty-months sentence for narcotics distribution was unreasonable, because it did not meet 18 U.S.C. § 3553(a)(2)'s sentencing aims. The same district court judge who sentenced Mr. Finch had found in *Howard* that the defendant was "a serial recidivist dedicated to dispensing 'poison' with no hope of redemption. . . ." *Howard*, 773 F.3d at 535. This conclusion was supported, according to the district court, by the defendant's "robust" criminal record. *Id.*, 773 F.3d at 532. But as this Court observed, most of the defendant's convictions in *Howard* "occurred between the ages of sixteen and eighteen." 773 F.3d at 532. And, turning to Supreme Court precedent for guidance, this Court stated unequivocally that "[y]outh is a 'mitigating factor,'" since "[t]he signature qualities of youth are

24

transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.'" *Howard*, 773 F.3d at 532 (quoting *Roper v. Simmons*, 543 U.S. 551, 570 (2005). Even on a deferential standard of review, this Court had no trouble finding that the district court "abused its discretion by focusing too heavily on [the defendant's] juvenile criminal history in its . . . weighing of the 3553(a) factors." *Howard*, 773 F.3d at 531.

*Howard*'s reasoning compels a reversal in this case. In sentencing Mr. Finch, the district judge made clear from the outset that it was "deeply concerned about this case and this defendant and the need to protect the public." (J.A. 41-42). This concern was grounded almost entirely upon Mr. Finch's prior criminal history. That criminal history included several misdemeanor charges that Mr. Finch sustained between the ages of sixteen and nineteen, including charges of disorderly conduct, assault on a government official, possessing stolen property, and resisting a public officer. (J.A. 51). The district court also placed heavy emphasis on Mr. Finch's only prior felony conviction: a conviction for an assault that Mr. Finch committed at the age of nineteen. (J.A. 51-52). The only other conviction in Mr. Finch's record, which the district court gave a brief nod to as part of its analysis, was another misdemeanor conviction for possessing stolen goods; Mr. Finch sustained that conviction at the age of nineteen as well. (J.A. 52). The overwhelming majority of Mr. Finch's criminal history, therefore, arose from

relatively minor, non-felonious criminal conduct that occurred at age nineteen or younger. (J.A. 93-94). It was on that criminal history that the district court anchored an excessive, above-guidelines sentence of seventy-two months.

In this case, as in *Howard*, "the district court focused extensively on a single factor—[Mr. Finch's] early criminal history—and it did so at the expense of a reasoned analysis of other pertinent factors." *Howard*, 773 F.3d at 531. "The Supreme Court has recognized, in the sentencing context, the diminished culpability of juvenile offenders, given their lack of maturity, vulnerability to social pressures, and malleable identities." *Howard*, 773 F.3d at 532 (citing *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012); *Graham v. Florida*, 560 U.S. 48, 68 (2010) *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Graham*, 560 U.S. at 68 (quoting *Roper*, 543 U.S. at 573).

By focusing most of its concern on Mr. Finch's essentially-juvenile criminal history, the district court gave little if any consideration to the other pertinent section 3553(a) factors and to the purposes of sentencing under 18 U.S.C. § 3553(a)(2). Mr. Finch and his counsel argued that Mr. Finch and his family

members had been attacked by gang members in the past, and that Mr. Finch's public dissociation from the gang placed him at risk for retribution. (J.A. 57, 61). This unrebutted fact was plainly relevant to "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). Mr. Finch's dissociation from the gang, and the potential retribution he faces due to that dissociation, was also relevant to show that a guideline sentence would "reflect the seriousness of the offense . . . promote respect for the law . . . provide just punishment for the offense. . .," and "[a]fford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(2)(A) & (B). But aside from "tak[ing] [Mr. Finch] at [his] word that [he] dissociated from the" gang, the district court never engaged in any meaningful discussion of this critical fact. (J.A. 65).

One sentencing factor that received no consideration, and that is in fact undermined by the district court's chosen sentence, is the statutory requirement that a sentencing judge must attempt to "avoid unwarranted sentence disparities among defendant's with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The *Howard* Court noted that one way district courts can achieve this congressional mandate is through the "genuine consideration" of the sentencing recommendations of Assistant United States Attorneys. 773 F.3d at 534 n.10. Although the district court is by no means

permitted to abdicate its role to the prosecutor when it comes to sentencing, this Court has recognized that the recommendations of federal prosecutors "can serve as an important pillar" in eliminating unjust sentencing disparities, and therefore those recommendations should be carefully considered by sentencing judges. *Howard*, 773 F.3d at 535

In this case, however, on at least two occasions, the district court rejected the Assistant United States Attorney's recommended sentence of fifty-one months, and never engaged with his reasoning for that recommendation.   (J.A. 48, 63). Although the district court was by no means required to impose the sentence requested by the prosecution, there is no indication that the district court gave due consideration to the "prosecutorial experience" in general, and to the Assistant United States Attorney's sentence recommendation in this case in particular.   The district court's failure to consider those factors undermines the validity of the sentence in this case, and opens the door to unwarranted sentencing disparities in violation of the Sentencing Reform Act.   *Howard*, 773 F.3d at 534-35.

Mr. Finch contends that based upon his personal history and characteristics, the nature and circumstances of the offense, the purposes of sentencing, and the need to avoid unwarranted sentencing disparities, a sentence of seventy-two months imprisonment is greater than necessary to satisfy 18 U.S.C. § 3553(a) and,

thus, is unreasonable. Accordingly, this Court should vacate the judgment of the district court and remand the case for resentencing.

## <u>CONCLUSION</u>

Mr. Finch respectfully requests that his sentence be vacated and that his case be remanded to the district court for resentencing.

## **REQUEST FOR ORAL ARGUMENT**

Mr. Finch respectfully requests oral argument and submits that such argument will aid the Court in deciding the issues presented.

This the 13th day of July, 2015.

/s/ W. Michael Dowling
BROOKS, PIERCE, McLENDON,
   HUMPHREY & LEONARD, L.L.P.
1600 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, NC 27601
(919) 839-0300
(336) 232-9223

*Counsel for Appellant*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,265*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 13, 2015                    /s/ W. Michael Dowling
                                        *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 13th day of July, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jennifer P. May-Parker
> OFFICE OF THE U.S. ATTORNEY
> 310 New Bern Avenue, Suite 800
> Raleigh, North Carolina  27601
> (919) 856-4530
>
> *Counsel for Appellee*

I further certify that on this 13th day of July, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ W. Michael Dowling
*Counsel for Appellant*